Glasgow v. St. Louis.

GLASGOW *et al.*, *Appellants*, v. ST. LOUIS *et al.*

DIVISION ONE.

1. **Legislative Motives:** ENACTMENT OF LAWS: MUNICIPAL ASSEMBLIES. While courts will not inquire into the motives of legislatures in enacting laws, even where fraud and corruption is charged, the rule is relaxed as to municipal bodies.

2. —— : —— : ——. The evidence in this case *held* not to show fraud on the part of the St. Louis City assembly, or any combination to injure anyone in the matter of vacating a street.

3. **Municipal Assembly:** VACATING STREET. Whether the street should be kept open or vacated was wholly a matter of expediency, and that was a question for the municipal assembly and not for the court to decide.

4. —— : —— : INJUNCTION. An injunction will not lie to restrain the enforcement of a city ordinance vacating a street on which plaintiff's property does not abut, and they suffer an inconvenience in common with all other persons.

5. **Constitution:** DAMAGE TO PRIVATE PROPERTY. Plaintiffs' property in such case is not damaged within the meaning of the constitution (art. 2, sec. 21), declaring that private property shall not be taken or damaged for public use without just compensation, since no injury peculiar to them is shown.

6. —— : ——. Where there is no physical interference with the property, nor any right or easement connected with or annexed to it affected, the constitutional provision affords no redress.

7. **Municipality:** VACATING STREET. Where a city has the power to vacate streets it makes no difference in the exercise of that power whether the public acquired the street to be vacated by condemnation or by dedication.

*Appeal from St. Louis City Circuit Court.*—HON. SHEPARD BARCLAY, Judge.

AFFIRMED.

*M. L. Gray* and *George Denison* for appellants.

(1) Plaintiffs' rights in the vacated street are property, and the act of the city in vacating the

street without providing compensation therefor to the plaintiffs constitutes a taking within a constitutional prohibition. *Pumpelly v. Green Bay Co.*, 13 Wall. 166 ; Angell on Water-Courses [ 6 Ed.] sec. 465*a*, p. 639 ; *Hooker v. Co.*, 14 Conn. 146 ; *Rowe v. Bridge Co.*, 21 Pick. 344 ; *Appraisers v. People*, 17 Wend. 604 ; *Arnold v. Railroad*, 55 N. Y. 661 ; *Council v. Croas*, 7 Ind. 9 ; *Tate v. Railroad*, 7 Ind. 479. ( 2 ) The city of St. Louis had no power to alien or dispose of streets so held in trust for public use, or abandon the trust, except in the lawful exercise of the right of eminent domain, granted to it under the charter. *Commissioners v. Lathrop*, 9 Kan. 453 ; Dillon, Mun. Corp. [ 3 Ed.] secs. 650, 651, 660 and 575 ; *L. & M. Co. v. Mayor*, 36 N. J. Law, 540 ; *Cummings v. City*, 90 Mo. 259 ; *Warren v. Mayor*, 22 Iowa, 351 ; *Sugar Co. v. Grain Co.*, 101 Mo. 192. ( 3 ) Equity will cause the trust in which the city holds this street to be observed, and the courts will enjoin the violation of it at the suit of parties specially injured by any attempted wrongful vacation of the street. *State v. Patterson*, 34 N. J. Law, 163 ; *Spiegel v. Gansberg*, 44 Ind. 418 ; *Cummings v. St. Louis*, 90 Mo. 259 ; *Warren v. Mayor, etc.*, 22 Iowa, 351 ; *Williams v. Presb. Soc.*, 10 Ohio St. 478 ; *Barclay v. Howell*, 6 Pet. 498. ( 4 ) It is the duty of the court to determine whether the use for which property is taken is public or not, and the court must do this without any regard to a legislative assertion on the subject, the burden being on the city to allege and prove that the use is public ; and evidence is admissible to prove what the use really is. *Railroad v. City*, 85 Mo. 674 ; *City of Savannah v. Hancock*, 91 Mo. 54 ; *Trans. Co. v. Railroad*, 94 Mo. 535 ; *County Court v. Griswold*, 58 Mo. 193 ; *St. Louis v. Frank*, 78 Mo. 41 ; *Aldridge v. Spears*, 101 Mo. 400. ( 5 ) The dedication, as made by the dedicators, and the acceptance of the same by the city, constitute a contract, the obligation of which cannot be impaired by the enactment of the ordinance in

question. *Warren v. Mayor*, 22 Iowa, 351 ; *Watertown v. Cowen*, 4 Paige, 510 ; Cooley on Const. Lim. [6 Ed.] p. 291 ; *Railroad v. Springfield*, 85 Mo. 674. ( 6 ) A general naked power to vacate streets, given by the legislature to a municipal corporation, must be supplemented by municipal legislation, protecting parties affected by such vacation, or the general statutory method provided for accomplishing the same result must be followed. It cannot be done arbitrarily. *James v. Darlington*, 71 Wis. 173 ; *Bruce v. Saline Co.*, 26 Mo. 262 ; *State v. Wells*, 70 Mo. 635 ; *Williams v. Carey*, 34 N. Y. Rep. 813 ; *Building Ass'n v. Tel. Co.*, 88 Mo. 258 ; *City of Savannah v. Hancock*, 91 Mo. 54. ( 7 ) Proceedings to vacate streets in the city of St. Louis should be the converse or reciprocal of proceedings for opening them. Under article 6 of city charter the cost of opening may be assessed against parties specially benefited thereby, and this provision of the charter has been sustained by numerous decisions of this court. *State v. St. Louis*, 62 Mo. 244 ; *St. Louis v. Speck*, 67 Mo. 403 ; *City v. Richeson*, 76 Mo. 470 ; *Brown v. Bridges*, 36 Iowa, 279 ; *Dougherty v. Brown*, 91 Mo. 26.

*T. A. Post* and *Leverett Bell* for respondents.

( 1 ) Plaintiffs' injunction was properly dismissed. ( 2 ) Under the Glasgow dedication the tract relinquished became part of a public street and subject to the charter power of vacation in the city of St. Louis. *Glasgow v. City*, 15 Mo. App. 120 ; 87 Mo. 682 ; *Kimball v. Kenosha*, 4 Wis. 321 ; *Aldridge v. Spears*, 101 Mo. 406 ; *St. Joe Terminal Co. v. Railroad*, 94 Mo. 536. ( 3 ) Since the municipal power to vacate streets is derived directly from the state and is not an implied or incidental one, but is given in express and specific terms, the question whether the ordinance is expedient and beneficial to the public or otherwise is not one to be determined by the courts. Dillon on Mun. Corp. [ 4 Ed.]

Glasgow v. St. Louis.

328; *Neier v. Railroad*, 12 Mo. App. 34; *Sargent v. Railroad*, 1 Handy, 62; *Fisher v. Harrisburg*, 2 Grant Cases, 296; *Railroad v. Springfield*, 85 Mo. 676; *State v. Clark*, 54 Mo. 36; *Plum v. Coal Co.*, 10 N. J. Eq. 200; *McCormick v. Patchen*, 53 Mo. 357. (4) If the members of the municipal assembly have acted corruptly, or have been guilty of malfeasance, they may be proceeded against in the courts. But this court cannot in this proceeding go behind their acts regularly passed in the exercise of an unquestioned power, and ascertain from testimony *in pais* and *dehors* the ordinance that the municipal assembly acted wrong in passing the measure. Such a course would be an assumption by the judiciary of a right in a collateral proceeding to try the municipal assembly. Certainly when the untrammeled power is given that body to do an act, the question that motives operated upon it to such lawful act is immaterial. Dill. on Mun. Corp., sec. 311; Cooley, Const. Lim. 186, 187; *Pike v. Megoun*, 44 Mo. 495; *Freeport v. Marks*, 59 Penn. St. 253; *Buell v. Ball*, 20 Iowa, 292; 5 Dill. C. C. Rep. 444; *State ex rel. v. Hayes*, 49 Mo. 604. (6) Plaintiffs cannot invoke the aid of the court to do away with the work of the municipal assembly, unless it plainly appears that the ordinance is an abuse of discretion, that it is grossly unjust or oppressive, or grossly unreasonable. *Neier v. Railroad*, 12 Mo. App. 34; *Corrigan v. Gage*, 68 Mo. 544; *City v. Weber*, 44 Mo. 547; *Hannibal v. Tel. Co.*, 31 Mo. App. 23; *Cape Girardeau v. Riley*, 72 Mo. 224; Horr & Bem. Mun. Ord., sec. 127; *White v. Kent*, 11 Ohio St. 550. Plaintiffs are certainly not entitled to an injunction. Their lands do not abut on the property sought to be taken, and they suffer no special damages. *Polack v. Asylum* 48 Cal. 490; *Bailey v. Culver*, 84 Mo. 531; *Smith v. Boston*, 7 Cush. 259; *Canal Co. v. St. Louis*, 2 Dill. C. C. Rep. 90; *Blood v. Railroad*, 2 Gray, 140, 141; 2 Stor. Eq., sec.

925 ; *Attorney General v. Nichol*, 16 Vesey, Jr., 342 ; *Killinger v. Railroad*, 50 N. Y. 206.

BLACK, J.—William Glasgow, Ann E. Lane, W. G. Haydock and the St. Louis Paint Manufacturing Company brought this suit against the city of St. Louis, the mayor thereof, Messrs. Shickle, Harrison and Howard, and the Shickle, Harrison & Howard Iron Company, a corporation, to enjoin them from carrying into execution ordinance 14068 vacating that part of Poplar street, between Twelfth and Fourteenth streets. The circuit court dissolved the temporary injunction and dismissed the petition, and from that judgment the plaintiff appealed.

Twelfth street runs north and south, and the next parallel streets to the west are Thirteenth and Fourteenth streets. Papin street begins at Twelfth street and runs west, crossing Thirteenth and Fourteenth and other streets. Gratiot street is the first street north and Chouteau avenue the first street south of Papin, both running east and west, parallel to the last-named street.

The plaintiffs own the two blocks between Thirteenth and Fourteenth streets, one north and the other south of Papin street. They have improved, and have large manufacturing establishments on, these respective parcels, comprising in all the two blocks. The defendant iron company owns the two blocks between Twelfth and Thirteenth streets, one north and the other south of Papin street ; and it is this portion of that street which the ordinance in question vacates. These two blocks are covered by buildings and sheds, and are both used in carrying on the business of manufacturing iron pipe.

In March, 1883, the municipal assembly passed an ordinance vacating and turning over to the iron company that part of Papin street now in question for a period of twenty years, for the consideration of $2,000, and other considerations not necessary to be mentioned. On the petition of some of the present plaintiffs, the city

was enjoined from carrying that ordinance into effect. 87 Mo. 678. Subsequently two other bills were introduced before the assembly simply vacating the same part of the street, both of which failed to pass. On the 21st of June, 1887, the municipal assembly passed the ordinance now in question which is in these words : " So much of Papin street as lies between Twelfth and Thirteenth streets is hereby vacated as a public street."

It is alleged in the present petition that the officers and agents of the city combined with the defendants to wrong and injure the plaintiffs and the public by vacating the street and converting the same to private use ; that is to say, to the use of the defendants, the Shickle, Harrison & Howard Iron Company, and pursuant to said combination passed the last-mentioned ordinance.

1. Considerable evidence was received by the trial court showing why and under what circumstances this vacating ordinance was passed. The rule of law is well established that the courts will not inquire into the motives of the legislature in enacting a law, even where fraud and corruption is alleged. Cooley on Const. Lim. [5 Ed.] 225. But the rule is somewhat relaxed as to municipal bodies. Speaking of such bodies it is said : " We suppose it to be a sound proposition that their acts, whether in the form of resolutions or ordinances, *may be impeached for fraud* at the instance of persons injured thereby." 1 Dill. Mun. Corp. [4 Ed.] sec. 311.

Members of both branches of the municipal assembly looked into the facts with care, and say they became satisfied that it would be a public benefit rather than a harm to close the street. The street commissioner says there had been no public demand for the street for ten years. The vacated part of the street lies in a manufacturing district, where the streets are unnecessarily close, according to other evidence. There is no doubt but the municipal assembly, in enacting the ordinance, intended to aid and foster a large manufacturing industry ; but it is equally clear that the ordinance was passed with due

regard to the public interests. The evidence entirely
fails to show any fraud on the part of the city author-
ities, or any combination to injure anyone. Nor does
the evidence show that the ordinance was an unreason-
able one. Whether the street should be kept open or
vacated was purely a matter of expediency, and that
was a question for the municipal assembly and not the
courts to decide. *State v. Clarke*, 54 Mo. 36; *The Spring-
field Ry. Co. v. The City of Springfield*, 85 Mo. 676;
*Kittle v. Fremont*, 1 Neb. 328.

2. The charter of the city of St. Louis gives the
mayor and assembly power, by ordinance, "to establish,
open, vacate, alter, widen * * * all streets, sidewalks,
alleys," etc. Under such a power the municipal assem-
bly may vacate a street or part of a street without any
judicial determination. And such a power, "when
exercised with due regard to individual rights, will not be
restrained at the instance of a property-owner claiming
that he is interested in keeping open the streets dedi-
cated to the public." 2 Dillon, Mun. Corp. [4 Ed.] sec.
666.

There is no doubt but a property-owner has an
easement in a street upon which his property abuts,
which is special to him, and should be protected; but
here the plaintiffs own no property fronting or abutting
on the part of the street which was vacated. Their
property is surrounded by streets not touched or
affected by the vacating ordinance. They will be
obliged to go a little further to reach Twelfth street, but
that is an inconvenience different in degree only from
that suffered by all other persons, and it furnishes no
ground whatever for injunctive relief. *Bailey v. Culver*,
84 Mo. 531.

Nor are the plaintiffs entitled to any relief by
reason of the clause in the present constitution which
declares "that private property shall not be taken or
*damaged* for public use without just compensation."
To entitle them to relief because their property will be

*damaged*, though not taken, they must show a special injury. Here, there is no physical interference with their property, nor is any right or easement connected therewith, or annexed thereto, affected. They will, therefore, suffer no injury which is special or peculiar to them. The inconvenience, if any in reality there is, is the same as that cast upon other persons. For these reasons the constitutional amendment furnishes them no ground for complaint. *Rude v. St. Louis*, 93 Mo. 408 ; *Fairchild v. St. Louis*, 97 Mo. 85 ; *Van De Vere v. Kansas City*, ante, p. 83 ; *City of Chicago v. Building Ass'n*, 102 Ill. 379 ; *Hesing v. Scott*, 107 Ill. 600.

It must be remembered that the city is here pursuing a power to vacate streets, conferred upon it in express terms, so that *Cummings v. St. Louis*, 90 Mo. 265, and some other cases cited by the appellants, have no application whatever to this controversy.

It appears Mary E. Lane and her husband, William Carr Lane, both now deceased, and the present plaintiff, Ann E. Lane, by a plat dated the twenty-first of June, 1854, dedicated Papin street to public use from Twelfth to Fourteenth streets, except about forty-three feet thereof next to Twelfth street. The wife of the plaintiff, William Glasgow, is the daughter of said Mary E. and William Carr Lane, and, we suppose, inherited the interest in the two blocks between Thirteenth and Fourteenth streets, now owned by the Glasgows. The iron company acquired title to the two blocks owned by it through the Lanes. These facts do not, in the least, modify or affect the conclusion before stated. The city has the power to vacate streets, and in the exercise of this power it can make no difference whether the public acquired the particular street by condemnation or by dedication. In either case it is for the municipal assembly to say whether the public interest requires the street to be kept open. It is very true that the question, whether a certain use is public or private, is a question

for the courts to determine. But it is for the assembly to say whether a given street shall be opened or vacated.

The further fact that one of the present plaintiffs was a party to the plat which dedicated the street to public use is wholly immaterial. The question as to whom the street will revert is not before us, and as to that we express no opinion whatever.

The judgment is affirmed. All concur, except BARCLAY, J., who did not participate in the judgment in this court.