CITY OF ST. PAUL *vs.* MICHAEL NICKL and another.

January 3, 1890.

**Constitution—Eminent Domain—Hearing—Notice to Land-Owner.—** It is not essential to the validity of statutory provisions for the condemnation of property for public use, or for the assessment of damages and benefits from public improvements, that the land-owner have notice of the action of the proper authorities in determining what property shall be taken, or what property may be benefited by such improvements. But, in respect to the proceedings to ascertain the amount of compensation or damages to be paid to the land-owner for property taken for public use, he is entitled to have the same determined by an impartial tribunal, and to notice and opportunity to be heard upon the matter before such tribunal.

**Same—Special Board—Appeal to Court.—** The legislature may provide that a special tribunal or board may act generally in a particular class of condemnation proceedings, where the right of appeal to the district court is preserved, so that no property can be actually appropriated until, in the judgment of the court, a fair and impartial valuation or assessment is made, and just compensation secured.

**Same—Procedure in Court on Appeal.—** It is within the discretion of the legislature to provide whether the appellate court shall, upon the trial therein, render final judgment fixing the valuation or assessment, or whether, in case the valuation or assessment of the board or commission shall be found inadequate or unfair, the proceedings shall be set aside, and a new appraisement made before the same or a new commission.

**Same—Charter of St. Paul.—** The provisions of the charter of the city of St. Paul, as amended by Sp. Laws 1889, *c.* 32, p. 586, in relation to assessment and condemnation proceedings for public improvements, *held* constitutional.

Proceedings were begun, under the charter of St. Paul, to condemn the right to take slopes off of the relators' lands abutting on Hall avenue, so that the avenue might be graded without providing lateral support for the abutting lands. Relators appealed to the district court, being dissatisfied with the damages assessed. At the time the appeal was perfected, in December, 1888, the city charter authorized

the district court, on appeal, to determine the amount of damages and render judgment therefor against the city. In April, 1889, the charter was amended as stated in the opinion. At the trial of the appeal, in the district court for Ramsey county, before *Vilas,* J., in May, 1889, the court found that the assessment of relators' damages was not a fair and impartial assessment and ordered judgment annulling it. The relators moved that the court amend the decision by adding a finding of the amount of damages they should receive, and by ordering judgment therefor against the city. The motion was denied, judgment was entered annulling the assessment, and the relators thereupon brought the record to this court by *certiorari.*

*Otto K. Sauer* and *Chapin & Sauer,* for relators.

*H. J. Horn* and *Davis, Kellogg & Severance,* for other land-owners interested.

*Oscar E. Holman,* for respondent.

VANDERBURGH, J. It was determined in *Rogers* v. *City of St. Paul,* 22 Minn. 495, and in *Carpenter* v. *City of St. Paul,* 23 Minn. 232, that it was competent for the legislature to authorize the board of public works of the city of St. Paul to determine what property is benefited by any proposed local improvement, and to assess the cost thereof upon such property according to the benefits conferred; and in determining what property is affected, or what property may be required for public uses, it is not necessary that the land-owner should be previously notified. But in respect to the proceedings to ascertain the compensation which shall be paid or secured to him for property required for such purpose, he is entitled to have his damages or the amount of his compensation determined by an impartial tribunal, and to notice, and an opportunity to be heard before such tribunal upon the question. The provisions of the charter as to notice and opportunity for hearing before the board of public works are sufficient to secure the constitutional rights of parties in these respects.

The only question of importance to be considered is whether the legislature have otherwise provided a suitable procedure and an appropriate tribunal for determining the value of property taken. Under the constitution of this state, it is only necessary that the pro-

ceedings be conducted in some equitable and fair mode, to be pro-vided by the legislature, either with or without a jury; opportunity being afforded to the land-owner or parties interested to present proper evidence and be heard thereon. *Kramer* v. *Cleveland & Pitts-burg R. Co.*, 5 Ohio St. 140, 147; *Ames* v. *Lake Superior & Miss. R. Co.*, 21 Minn. 241, 293; *Bruggerman* v. *True*, 25 Minn. 123; *State* v. *Messenger*, 27 Minn. 119, 123, (6 N. W. Rep. 457;) *Heyne-man* v. *Blake*, 19 Cal. 579, 597; Lewis, Em. Dom. § 313. If these ends are secured, it is not for the courts to say that the legislature should have provided a different mode of procedure, though the one provided may not be the best; and to warrant the court in holding it void, there must appear to be some radical defect, either as re-spects the tribunal provided or the opportunity to be heard. The proceedings may be conducted before a court without a jury, and without any previous examination or inquiry by a commission. That the legislature may provide that a special tribunal or board may act generally in a particular class of condemnation proceed-ings where the right of appeal is preserved, appears to have been determined in *Bruggerman* v. *True*, and *State* v. *Messenger, supra,* and is not questioned in *Langford* v. *Com'rs of Ramsey Co.*, 16 Minn. 333, (375.) This does not appear to be seriously questioned by ap-pellants, provided, only, that the appellate court may proceed to make full inquiry, and render final judgment thereon. This they claim was secured by the provisions of the charter as it stood after the amendment of 1887, but insist that, under the amend-ment of 1889, the court is powerless to render a judgment such as will protect their rights.

Under the charter, as amended in 1887, (Sp. Laws 1887, p. 338, § 16,) the appeal by a land-owner "shall be tried as in the case of other civil causes, except that no pleading shall be necessary; and on such trial the only question to be passed upon shall be whether the said board of public works had jurisdiction in the case, and whether the valuation of the property specified in the objections is a fair valuation, and the assessment, so far as it affects such property, is a fair and impartial assessment. The judgment of the court shall be to confirm the assessment if it shall have been found that said

board had jurisdiction, and that said valuation and assessment, in so far as the same shall affect the property of said appellant, are fair and impartial. If the court shall find that the board of public works had no jurisdiction in the matter appealed from, then and in such case the judgment of the court shall be to annul said assessment. If the court shall find that said board had jurisdiction, and shall also find that said valuation is unfair, and that the damages awarded by said board to said appellant are insufficient and inadequate for the property so appropriated, *then and in such case the court shall determine and find the amount of damages* which said appellant is entitled to receive, and shall order judgment therefor." By the amendment of 1889, the provisions for judgment upon appeal are as follows: "On such trial the only question to be passed upon shall be whether the said board of public works had jurisdiction in the case, and whether the valuation of the property specified in the objections is a fair valuation, and the assessment, so far as it affects said property appropriated, is a fair and impartial assessment. The judgment of the court *shall be either to confirm or annul the assessment in so far as the same affects the property appropriated of the said appellant.*" Sp. Laws 1889, *c.* 32, p. 587. By section 15, tit. 1, *c.* 7, of the charter, (see Sp. Laws 1887, p. 338,) it is provided as follows: "If said assessment shall be set aside by the said board, or by the court, the said board of public works shall proceed *de novo*, without any further order from the council, to make another or new assessment; and they shall proceed in like manner, and give the like notice, as herein required in relation to the first, and all parties in interest shall have the like rights, and the said board shall perform like duties and have like powers, in relation to any subsequent determination, as are hereby given in relation to the first." The procedure under the present law is therefore clearly marked out. The appeal and trial in the district court are (in cases of appeal) an essential part thereof. There can be no taking of the property of the citizen until the court shall determine, after a "trial, as in the case of other civil causes," that the valuation and assessment are fair and impartial, and until the lawful compensation so ascertained shall be duly paid or secured. Charter, *c.* 7, §§ 17, 18. This act is not so clearly in conflict with

the fundamental law as to authorize the courts to hold that its provisions are inadequate for a fair investigation and a just judgment. If the court, upon its determination that a valuation and assessment were inadequate and unfair, was authorized to refer the matter to the same or a new commission, as it might determine, for another appraisement, as is the practice in some states, it would hardly be contended that the procedure would be invalid. *City of Minneapolis* v. *Wilkin*, 30 Minn. 140, (14 N. W. Rep. 581;) *Virginia & Truckee R. Co.* v. *Elliott*, 5 Nev. 358, 364. But it was a matter fairly within the discretion of the legislature to decide whether it would require the case to be determined by the court, or referred again to the same standing commission, or a new one selected for the purpose.

The presumption is that the members of the board are competent and impartial, and that they will faithfully discharge their official duty. There is nothing in their connection with the city government to disqualify them. They are no part of the governing body. They cannot authorize or order condemnation proceedings. Their duties are chiefly advisory, as respects matters referred to them by the council, under the charter; and, in respect to valuation or appraisements in such proceedings, their official relation to the city is no more subject to legal criticism than that of assessors or equalization boards in the same municipality; and the right of appeal to the district court from the assessment relieves the statute from any serious objections; and, under the provisions as they exist in the present charter, no property can be taken until the assessment or valuation shall be adjudged fair and impartial, after trial in the district court upon appeal.

The trial in the district court will ordinarily disclose the defects or inequality, if any, in the original appraisement, and advise parties of the correct rule to be applied, if a wrong one has been adopted; so that, as we apprehend, a third assessment will, in practice, rarely be found necessary; but if it should be, the provision in the charter allowing it is one of which the land-owner can hardly be expected to complain.

It is also complained that the city has taken possession of the property in question pending the proceedings; but this does not

change the rule of valuation and assessment under the charter, whatever independent remedies by action the parties may have.

Judgment affirmed.