In re Petition of Cora E. Fisher for the Appointment of Viewers to ascertain the damages and assess the benefits resulting from the change of grade of Woodland Avenue. Appeal of the City of Allegheny.

*Streets—Constitutional law—Declaration of rights—Act of April* 1, 1870.
The act of April 1, 1870, P. L. 751, entitled " An act relative to streets in the city of Allegheny," in so far as it makes the city a judge in its own case in condemnation proceedings, is a palpable violation of the declaration of rights, and is unconstitutional.

*Streets—Change of grade—Act of May* 16, 1891—*Remedy.*'
A party entitled to relief will not be turned away from the courts because his property has been taken, injured or destroyed under a local law that makes no provision for.compensation, so long as a general law can be found which supplies the deficiency in the local law, and gives him an ample remedy.

The city of Allegheny changed the grade of one of its streets. It had a right to do so both under the act of April 1, 1870, P. L. 751, and the act of May 16, 1891, P. L. 76. The act of 1870 made no legal provision for ascertaining the damages done by the change of grade. *Held*, that a landowner injured by the change of grade had a right to avail himself of the remedy provided by the act of 1891.

Argued Oct. 26, 1896. Appeal, No. 15, Oct. T., 1896, by the city of Allegheny, from order of C. P. No. 3, Allegheny Co., Aug. T., 1895, No. 107, confirming report of road viewers. Before STERRETT, C. J., GREEN, WILLIAMS, MCCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Petition of Cora E. Fisher for the appointment of viewers to ascertain the damages and assess the benefits resulting from the change of grade of Woodland avenue in the Eleventh ward of the city of Allegheny.

From the record it appeared that the petition was presented on May 25, 1895. Viewers were duly appointed, but before they made their report a petition was filed by the city of Allegheny for a rule to show cause why the appointment of the viewers should not be vacated. The ground alleged for the vacation of the appointment of viewers was that proceedings to assess benefits and damages had already been had under the act of April 1, 1870, P. L. 751, for the change of grade of Woodland avenue, and that the report in these proceedings had been confirmed by councils. This rule was discharged, and subsequently the court confirmed the report of viewers appointed upon the petition of Cora E. Fisher.

*Errors assigned* were (1) in entertaining the petition for the appointment of viewers; (2) in not vacating the appointment of viewers; (3) in not confirming the report of the viewers.

*Geo. Elphinstone*, with him *Elliott Rodgers*, for appellant.—The grade of the street in question in this case was established and the grading thereof effected under local law. There was no petition of property owners asking for the improvement, and under the said law there was no necessity therefor. The act of 1891 requires such petition and provides for the quashing of ordinances passed without it. It affords a complete system for street improvements, and its provisions with reference to viewers are evidently only intended to apply to improvements effected under that system: Hand v. Fellows, 148 Pa. 456; Hanover Borough's Appeal, 150 Pa. 204.

It is not contended that the act of 1870 violates the constitution, as being special or local legislation, for it was enacted four

years before such legislation was prohibited. The law does not, therefore, come within the reason given for the overthrow of the act of 1889, in Wyoming street, 137 Pa. 494.

The assessment of benefits to pay for local improvements has long been regarded as a species of taxation, the power to levy which the legislature can intrust to municipalities. This in no wise interferes with the powers of the quarter sessions; councils and the court may have concurrent jurisdiction: In re Twenty-eighth Street, 102 Pa. 140.

If the act of 1870 is unconstitutional, the remedy of the property owner is trespass. We think it incompetent to him to subject other property owners and the city to assessments of benefits and damages made by a tribunal of viewers, under the act of 1891.

*Charles W. Dalhinger*, for appellees.—The Supreme Court in Huckestein v. Allegheny, 165 Pa. 367, on January 7, 1895, practically decided that the appointment of viewers by Allegheny city on change of grade was unconstitutional, basing their opinion on the case of Wyoming Street, reported in 137 Pa. 494.

That the city had the power to change grades and grade streets under the act of 1870 is unquestioned, and that it had the same power under prior acts is also a fact, and further it is a fact that it had, and still has, the implied power possessed by all municipalities: City of Williamsport v. Com., 84 Pa. 493; White v. Borough of McKeesport, 101 Pa. 394; Com. v. George, 148 Pa. 466.

There being no question as to the power of Allegheny to make the said improvement there can be no question as to the validity of the present proceedings under the act of 1891. In re Shawmont Ave., 5 Dist. Rep. 192; West Chester Alley, 160 Pa. 92.

Before the passage of the act of 1891, our remedy was undoubtedly by suit in trespass, but since the enactment of that law such an action will not lie: Beltzhoover Borough v. Gollings, 101 Pa. 293; Power v. Borough of Ridgeway, 149 Pa. 317. Suit in trespass is the proper remedy where the municipality inflicts an injury by an illegal act: White v. McKeesport, 101 Pa. 394; In re Shawmont Ave., 5 Dist. Rep. 192.

The question as to whether an improvement begun under one

act can be completed under the act of 1891, is no longer an open one. It has been passed upon by the Supreme Court a number of times: Beltzhoover Borough v. Beltzhoover's Heirs, 173 Pa. 214; Hanover Borough's App., 150 Pa. 204; In re Ridge Ave., 99 Pa. 469.

OPINION BY MR. JUSTICE WILLIAMS, November 9, 1896:

The constitution guards the citizen against an unjust or oppressive exercise of the right of eminent domain. In section 8 of art. 16 it is provided that municipal, like all other corporations possessing the right of eminent domain, shall make " just compensation for all property taken, injured or destroyed by them; " and that such compensation shall be paid or secured to the owner before the taking, injury or destruction shall be allowed to take place. The same section secures to the property owner the right to appeal from any preliminary appraisement of the compensation due him, and the further right to a trial before a jury in such appeal according to the course of the common law. The machinery by which this " just compensation" shall be ascertained is provided by the act of 1874. It is set in motion upon the petition of the corporation or of the owner. It consists of the appointment by the proper court of viewers to investigate and determine the value of the injury done to the owner, and then to report to the court. From this report an appeal lies to the court that appointed the viewers, in which upon request the amount of the damages to be paid to the claimant may be determined by trial before a jury. The whole proceeding is judicial. Every successive step is made a matter of record in the office of the clerk of the court, and is open to the inspection of the parties and the general public at all times. The idea that the corporation exercising the right of eminent domain might exercise judicial jurisdiction over its own causes, appoint viewers to ascertain the damages it had inflicted upon a property owner, require him to come before it and contest the conclusions of the viewers, confirm or set aside the report at its will, and set up its own action in support of the plea of res adjudicata, when called upon in a court of law to answer for the taking, injury or destruction of the property of the citizen, gets no support or countenance from the constitution or the general law of 1874. It is too monstrous to be

tolerated. The city is the taker. The citizen whose property is affected is the complaining party, the plaintiff. This controversy must be litigated in, and determined by, the established judicial tribunals to which the decision of all other controversies is committed. The defendant can have no better right to sit as judge in its own case than the plaintiff, and so much of the local act of 1870 as professed to confer this power upon the defendant is a palpable violation of the declaration of rights, and of section 7, art. 3 of the constitution. The city can properly raise committees, or appoint viewers, or boards of appraisers, for its own information and require reports to be made to the mayor, councils, or heads of departments. Such bodies are instrumentalities made use of in the administration of municipal affairs to facilitate the transaction of business, and to secure exact information in regard to important subjects upon which municipal action may become necessary. But it can call upon no one having a claim against the city to submit to the arbitrament of such boards or committees, or of the city itself. Now in this case the city of Allegheny, by ordinance established the grade of Woodland avenue, and in the same ordinance, acting under the local act of 1870, appointed viewers to assess the damages and benefits occasioned thereby, with directions to report to the city councils. The viewers made a report allowing no damages and assessing no benefits. This report was confirmed by the city councils. In 1894 the work of changing the grade upon the ground was entered upon, and the avenue was put upon the grade established by the ordinance. In 1895 Cora E. Fisher presented her petition to the court of common pleas of Allegheny county for the appointment of viewers to assess the damages she had sustained by reason of the change of grade. Viewers were appointed who awarded damages, and imposed them upon the city. This report has now been confirmed, and the present appeal was taken from the decree of confirmation. The appellant alleges that the court of common pleas has no jurisdiction over the assessment of damages done, or benefits conferred, by the change in the grade of Woodland avenue. The first reason given in support of this denial of jurisdiction rests on the alleged legal value of the proceedings taken by the city before itself, under the act of 1870. The second rests upon a denial of the jurisdiction of the court. The

first of these reasons requires no discussion. It was decided by this court in re Wyoming Street, 137 Pa. 494, and in Huckestein's Appeal, 165 Pa. 367. The second reason has not been heretofore considered but it does not seem to be involved in much difficulty. The entry of the city upon the premises of Mrs. Fisher was made as is alleged under the act of 1870, but it was equally authorized by the act of May 16, 1891, and its supplement of June 12, 1893. The act of May 16, 1891, authorizes all municipal corporations to change the grade or lines of its streets, lanes or alleys, and in so doing to take, use, occupy or injure private property.

If the compensation due to the owner is not ascertained by agreement, provision is made by this act for its ascertainment by proceedings in the court of common pleas of the proper county. Upon petition of the owner or of the corporation viewers are to be appointed to ascertain the damages and the benefits and make report to the court appointing them. When the report is made both parties have an opportunity to be heard for or against the report, and, if required by either party, a trial may be had before a jury, and the amount to which the owner is entitled as his "just compensation" determined by a verdict. This act is general in its terms. It embraces "all municipal corporations of this commonwealth;" and it provides a remedy for every person injured by the action of any municipal corporation relating to the change of the grade of any of its streets, lanes and alleys. If by reason of the unconstitutionality of the provisions of the act of 1870 relating to the assessments of damages and benefits for the change of grade upon Woodland avenue, there is no local act under the terms of which the plaintiff has a right to apply to the court of common pleas, then the act of 1891 provides a remedy. It relates to this subject. It empowers the court to act upon the petition of either party, and provides the necessary machinery for the ascertainment of damages and the assessment of benefits. If the entry authorized by this act has taken place under the authority of any act of assembly, and there is no other means of determining the amount of injury done thereby to the property owner, he may come into the court of common pleas and ask to be accorded the benefits of an ascertainment of his damages under the provisions of the general law of 1891. A party entitled to relief will not be

turned away from the courts because his property has been taken, injured or destroyed under a local law that makes no provision for compensation, so long as a general law can be found which supplies the deficiency in the local law and gives him an ample remedy. The city has changed the grade of Woodland avenue. It had the right to do so under the act of 1870 and that of 1891. The act of 1870 made no provision for ascertaining the damages done by the change of grade. The act of 1891 makes ample provision, and the plaintiff is entitled to the benefit of its provisions.

The judgment is affirmed.