STATE EX REL. MINNESOTA MUTUAL INDEMNITY COMPANY v. GEORGE W. WELLS, JR.[1]

April 30, 1926.

No. 25,202.

**Section 3710 construed.**

1. G. S. 1923, § 3710, applies to mutual insurance companies which desire to write surety bonds covered by G. S. 1923, § 3315, subd. 6.

**Section 3319 construed.**

2. G. S. 1923, § 3319, by virtue of § 3711, subd. 2, requires all such companies as engaged in writing surety bonds to deposit securities as therein provided.

**Mutual insurance company not allowed to write surety bonds for public officials.**

3. The fundamental essential of mutual insurance, that the insured and insurer are identical, will not permit a mutual company to

[1] Reported in 208 N. W. 659.

write surety bonds for public officials. The facts involved in writing such bonds are inherently incompatible with mutual insurance.

Insurance, 32 C. J. p. 988 n. 59; p. 1019 n. 48; p. 1020 n. 66 New.

Upon the relation of the Minnesota Mutual Indemnity Company the district court for Ramsey county granted its alternative writ of mandamus directed to George W. Wells, Jr., Commissioner of Insurance, commanding him to issue a certificate authorizing the Minnesota Mutual Indemnity Company to write surety bonds. The court, Olin B. Lewis, J., made findings and discharged the writ. Relator appealed from the judgment. Affirmed.

*Elliott, Doll & Coursolle,* for appellant.

*Clifford L. Hilton,* Attorney General, and *G. A. Youngquist,* Assistant Attorney General, for respondent.

WILSON, C. J.

Relator is a domestic mutual insurance company. It amended its certificate of incorporation relating to its line of insurance to include "surety bonds." We assume that it was intended to reach the class of business embraced in G. S. 1923, § 3315, subd. 6. (All of the sections hereinafter cited refer to G. S. 1923.) The commissioner of insurance refused to issue his certificate under § 3313, that the amendment complied with the law. Thereupon relator sued out an alternative writ of mandamus to compel the issuance of such certificate. The commissioner said in his return that relator had failed to establish a guaranty fund as permitted by § 3545 and that it had failed to comply with § 3710 which requires that companies writing fiduciary or surety bonds deposit with the commissioner securities worth not less than $100,000. Sections 3711, subd. 2, 3319. Upon the admitted allegations of the writ and the uncontroverted new matter in the return the trial court ordered the writ discharged. This appeal is from the judgment which followed.

Section 3315 authorizes mutual insurance companies to carry many lines of insurance. If this section stood alone it would perhaps be sufficient to give appellant the authority which it claims

thereunder. Relator has made no effort to provide itself with a guaranty fund as suggested in § 3545. In some respects it could hardly do so and retain the characteristics of a mutual company. Dwinnell v. M. F. & M. M. I. Co. 87 Minn. 59, 64, 91 N. W. 266, 1098; Kennan v. Rundle, 81 Wis. 212, 223, 51 N. W. 426. Such guaranty fund would take the place of the statutory contingent liability required by § 3547. Relator contends that its compliance with § 3547, which requires among other things a contingent liability, authorizes it to transact the business specified in § 3315, subd. 6. It also contends that § 3710 has no application to it. Sections 3546, 3547 and 3548 were enacted by L. 1921, p. 250, c. 200. The act does not recite that these provisions are exclusive and it had no repealing clause. There is nothing to indicate any intent to repeal by implication other statutory provisions relating to the writing of fiduciary and surety bonds. We see no reason why this act cannot stand in harmony with § 3710. Borgerding v. Village of Freeport, 166 Minn. 202, 207 N. W. 309. Section 3312 defines "company" as embracing every corporation or association engaged in insurance as principal. This includes a mutual company. Section 3710 relates exclusively to companies writing surety bonds, within the purview of the statute, § 3315, subd. 6, and it provides in part:

"No company * * * shall transact any business in this state until it shall have satisfied the commissioner that it has complied with all the provisions of law relative to security prescribed for foreign life companies, so far as applicable, and obtained his certificate to that effect."

This section seems to have had its origin in L. 1895, p. 423, c. 175, § 56. This chapter also relates to mutual companies. We are forced to the conclusion that § 3710 is applicable to all companies writing surety bonds unless expressly excepted. The legislature has not seen fit to exclude mutual companies writing surety bonds from the requirements of § 3710. Section 3310 applies to all companies engaged in such business. Section 3711, subd. 2, relating to foreign insurance companies specifies that its deposits comply with those required of like domestic companies. Section 3319 requires domestic

life companies to have on deposit securities, the value of which shall never be less than $100,000. It perhaps has no application to such companies which are not engaged in this particular line of insurance. Before the relator could engage in such business it was therefore necessary for it to deposit the required securities with the commissioner of insurance and failure to do so justified his refusal to make the certificate required by § 3313. This result would follow whether the guaranty fund was provided or not.

There seems however to be a fundamental incompatibility involved in a mutual company writing surety bonds for public officials. A mutual company is distinguished from all other companies in that the policyholders are both the insurers and the insured. Losses are to be paid by assessments upon the policyholders as provided by statute. The policy so provides. Dwinnell v. M. F. & M. M. I. Co. supra. The element of identity and mutuality between insurer and insured must exist in any business which such mutual company may transact. This is indispensable to mutual insurance. This element is present where the contract indemnifies against the loss of one's property, as in the case of fire insurance, or where it insures against loss by reason of one's own liability to another, as in the case of automobile accidents or malpractice. It may be present where the bond indemnifies an employer against embezzlement by an employe. Quinn-Shepherdson Co. v. U. S. F. & G. Co. 142 Minn. 428, 172 N. W. 693. In such case the employe whose fidelity is guaranteed is not a party to the contract. The employer is the insured. He pays the premium and is the beneficiary, and as between him and others who are insured the element of mutuality exists. But where the bond is given by a public official it must be executed by the principal as well as by the surety. Section 9677. A blanket bond of the kind involved in Quinn-Shepherdson Co. v. U. S. F. & G. Co. supra, cannot for that reason be used. In the bond covering a public official the principal and the surety assume the obligation alone. The obligee is the state or the municipality. Neither assume any obligation to pay assessments. There is no identity between the insurer and the insured. The in-

surance is not for the official and hence he is not a member of the company. The protection is for the benefit of the public which cannot be a member.

Our attention has not been called to any authority granted to officers of the state or municipalities to enter into such contracts. It therefore seems impossible to have the necessary member mentioned in § 3547, subd. e, who is to care for "a contingent liability of the members at least equal to the premium." The incongruity becomes more prominent if we attempt to consider the officials themselves as members. In such case the indemnity or protection on such insurance must rest on the ability of payment by the persons who have defaulted or who may default. But in this illustration the element of mutuality is absent because there is no identity of the insurer, the official, with the insured, the public. Take for further illustration the bond of a notary public. Is he the member or is the public? The notary is not indemnified. The insurer does not undertake to reimburse him for any loss that he may be obliged to pay by reason of his own default. It is hardly the state or the public for it does not insure. The persons for whose benefit the bond is given are not presently ascertainable. In these cases the net result seems to be that the insured and the insurer are not identical. If not, mutual insurance cannot exist. It is incompatible with such facts and if the language of the statute is susceptible to the construction that such companies could carry on such insurance we must regard it as an inadvertence.

Affirmed.